UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SABY GEORGE, M.D.,

                Plaintiff,

-vs-

ROSWELL PARK CANCER INSTITUTE
CORPORATION d/b/a ROSWELL PARK
COMPREHENSIVE CANCER CENTER and
GURKAMAL SINGH CHATTA, M.D.;

                Defendants.
_____

COMPLAINT AND DEMAND
FOR JURY TRIAL

Civ. Case No.:_____

The Plaintiff, Saby George, M.D., by and through his attorneys Tully Rinckey PLLC, complaining of the Defendants Roswell Park Cancer Institute Corporation d/b/a Roswell Park Comprehensive Cancer Center and Gurkamal Singh Chatta, M.D., hereby alleges as follows:

**NATURE OF ACTION**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, Article 15 §§ 296, et seq. ("NYSHRL"), and 42 U.S.C. § 1981 ("§ 1981"). The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal and state laws, which rights provide for injunctive and other relief for illegal discrimination and retaliation in employment.

**JURISDICTION**

2. Jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1331, Title VII, 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 1981 ("§ 1981").

1

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 and the New York State Human Rights Law, Article 15, § 296, et seq.

**VENUE**

4.      Venue is proper by virtue of 28 U.S.C. § 1391, in that the events giving rise to the claims in this action arose in this judicial district.

**PARTIES**

5.      Plaintiff Saby George, M.D. ("George" or "Plaintiff") is a citizen of the United States, residing in the County of Erie, State of New York.

6.      At all times relevant, Plaintiff was a full-time employee of Defendant, Roswell Park Cancer Institute Corporation d/b/a Roswell Park Comprehensive Cancer Center, within the definition of "employee" under Title VII and the NYSHRL.

7.      Upon information and belief, Defendant Roswell Park Cancer Institute Corporation d/b/a Roswell Park Comprehensive Cancer Center ("Roswell") was and is a New York State public benefit corporation organized under the Public Authorities Law of the State of New York, with a place of business located at Elm and Carlton Street, Buffalo, New York, in the County of Erie.

8.      Upon information and belief, Defendant Roswell provides research and treatment for cancer.

9.      Defendant Roswell was and is an "employer" within the definitions of Title VII and NYSHRL.

10. Upon information and belief, Defendant Gurkamal Singh Chatta is an individual employed by Roswell, had the decision-making authority to control the terms, conditions and privileges of George's employment, and is a resident of the County of Erie, State of New York.

## COMPLIANCE WITH THE JURISDICTIONAL REQUIREMENTS OF EMPLOYMENT DISCRIMINATION CLAIMS

11. All conditions precedent to jurisdiction under the state and federal discrimination statutes have been complied with in that Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission within three hundred days of the commission of the last unlawful employment practices. Within said charge, Plaintiff alleged that Defendants violated his rights under state and federal employment laws.

12. Due to the dual filing agreement between the Equal Employment Opportunity Commission and the New York State Division of Human Rights, the filing of a charge with the Equal Employment Opportunity Commission acts as a filing of the same charge with both agencies.

13. Plaintiff was issued a Right to Sue Notice from the Equal Employment Opportunity Commission, dated September 29, 2022.

14. This complaint has been filed within ninety (90) days of receipt of the Right to Sue Notice.

## FACTS

15. Plaintiff is an individual whose race is Indian, color is dark skinned, national origin is southern Indian, and religion is Christian.

16. Plaintiff started his first job as Assistant Professor of Medicine at Roswell Park Cancer Institute in August 2010.

17. In 2014/2015, there was a crisis at Roswell in the Department of Medicine under the leadership of Dr. Adjei.

18. Nearly a third of faculty left the institute suddenly.

19. Everyone in the Department of Medicine was given a productivity bonus of $25,000 and Plaintiff was denied that due to the discrimination by Dr. Adjei.

20. Plaintiff was also about to leave, but Dr. Johnson, President and CEO of Roswell Park, wanted him to stay, advising that he was one of the best doctors in the Department.

21. Dr. Johnson gave Plaintiff a small retention bonus and a raise, and he decided to stay.

22. Dr. Gurkamal Singh Chatta ("Chatta") started at Roswell Park Comprehensive Cancer Center in January 2016 and became Plaintiff's supervisor.

23. Chatta is a lighter skinned, north Indian and Hindu/Sikh.

24. Dr. Adjei left in March 2016 and things got better as soon as Dr. Ernstoff became the new Chair of Department of Medicine.

25. Plaintiff found Dr. Ernstoff to be a fair Chairperson and he built the Department back into a strong one.

26. Plaintiff's immediate supervisor, Chatta, was making Plaintiff's life difficult since he came to Roswell.

27. In or around June 2018, Plaintiff notified Susan Johnson ("Ms. Johnson"), Director, Employee & Labor Relations, that Chatta was discriminating against him because of his "ethnic origin."

28. Ms. Johnson did not respond to these allegations.

29. On or about October 17, 2018, Plaintiff emailed Ms. Johnson to inform her again of the ongoing discrimination.

30. Chatta continued to create roadblocks for Plaintiff's outside consulting opportunities.

31. Chatta disapproved many of the outside consulting opportunities which were ultimately overturned and approved by Dr. Ernstoff and the Chair of Ethics Committee, Dr. Camille Wicher.

32. Chatta attempted, unsuccessfully, to remove Plaintiff from his Principal Investigator role in many clinical trials.

33. Chatta used his subordinates to make Plaintiff's life difficult in clinic.

34. Examples include using the then clinic administrator, Karen Sniadecki, to provide inaccurate/fabricated information about Plaintiff's clinical productivity and pressure him to work in the clinics more than required.

35. Another way Chatta would hurt Plaintiff was by not providing adequate Nurse Practitioner support to see patients when his clinic was short on staff.

36. Staffing was managed by Chatta and a Clinic Manager.

37. Chatta also employed tactics to reduce patient flow to Plaintiff's clinic by working closely with Dr. Guru, the Chair of the Urology Department.

38. By reducing the referral of patients from Dr. Guru and channeling all of those to his clinic, Chatta was able to reduce Plaintiff's new patient load.

39. Plaintiff was able to keep his volume up by compensating with direct patient referrals from outside physicians.

40. Chatta also negatively impacted Plaintiff's professional growth at Roswell.

41. Despite becoming an Associate Professor in 2016, Plaintiff's salary was not raised to Associate Professor level until the end of 2019.

42. Plaintiff had been asking for a raise since 2016 and Chatta had blocked it with the excuse that "Candace Johnson had given you a bonus in 2015."

43. However, Plaintiff clarified that the additional compensation was a retention bonus and not a productivity bonus or a raise consistent with his rank.

44. Chatta was successful in preventing a salary raise for the Plaintiff by creating these roadblocks and not supporting Plaintiff.

45. In 2019, Plaintiff reached out to Dr. Ernstoff directly about the pay issue.

46. Dr. Ernstoff realized that Plaintiff had been underpaid for a long time and he immediately gave Plaintiff a bonus and a salary raise to Associate Professor level in late 2019.

47. Plaintiff complained to Dr. Ernstoff many times about the discriminatory treatment and harassment by Chatta.

48. Dr. Ernstoff had Plaintiff engage in meetings with Chatta on several occasions, however, Chatta never stopped harassing Plaintiff.

49. Upon information and belief, no investigation was done by Human Resources into Plaintiff's complaints.

50. Dr. Ernstoff asked Plaintiff to complain to Human Resources.

51. Plaintiff made the complaint in 2017.

52. Plaintiff complained that he was facing ethnic type discrimination from Chatta and that his workplace was made toxic by Chatta and his subordinates.

53. Human Resources took nearly two years and nothing was happening and Plaintiff's life was made more difficult.

54. After an investigation, it was found that Plaintiff's complaints were valid.

55. On November 18, 2019, Plaintiff's reporting was changed to Dr. Ernstoff directly, as opposed to Chatta.

56. Plaintiff was told that he would be provided with a written summary of investigation by Michael Sexton, Roswell's General Counsel, and Errol Douglas, Vice President of Human Resources, but it never was provided.

57. Plaintiff requested this because he was being considered for a Medical Director position in Clinical Research Services.

58. The position was a non-union position and Plaintiff was uncomfortable taking such a position that would require him to leave the PEF Union with an unresolved investigation.

59. In the meantime, the CEO, Dr. Candace Johnson, offered Plaintiff a Director of Clinical Research Services (CRS) position in August 2019.

60. The contract was being finalized by early November 2019.

61. Two days after Plaintiff's reporting was changed from Chatta to Dr. Ernstoff, as a result of the investigation, Dr. Johnson called Plaintiff to her office, on November 20, 2019, and rescinded the offer of CRS Director.

7

62. When Plaintiff asked her the reason why it was being rescinded, she mentioned that "You know, people talk".

63. This happened after Plaintiff had already started working in the capacity of CRS Medical Director.

64. Plaintiff had presented at the External Advisory Board on October 25, 2019 and it was announced that Plaintiff was the new Medical Director of CRS.

65. The rescinding of the offer humiliated Plaintiff in front of his co-workers and leaders who knew of the title that had been offered and then taken away from him.

66. Dr. Ernstoff left Roswell in September 2020.

67. Dr. Ernstoff and many international leaders in the field had supported Plaintiff's promotion to full Professor in 2020.

68. Plaintiff ultimately became a Professor in November 2020.

69. In late 2020, Plaintiff was talking with Chatta and two nurses, Alexandra Sanders and Therese Kurtz.

70. Plaintiff mentioned that his "Vitamin-D levels were very low since moving to Buffalo."

71. Chatta offensively remarked, "you people from South India are dark-skinned and you should not have low Vitamin-D levels."

72. In November 2020, Plaintiff took on a leadership role under Dr. Igor Puzanov, who became the new Senior Vice President for clinical research.

73. Chatta and the Department had increased the Plaintiff's clinical workload from forty percent (40%) to fifty percent (50%) clinical. To manage his workload, Plaintiff requested

that Chatta, as the Interim Chair of Medicine, reduced his clinical effort percentage from fifty percent (50%) down to thirty percent (30%) or forty percent (40%). Plaintiff's clinical effort was at forty percent (40%) since he started at Roswell in 2010.

74. Chatta refused this request without explanation.

75. Plaintiff was then told on February 26, 2021, at the annual meeting, that he should work with Dr. Puzanov to get the reduction.

76. In direct contrast, Plaintiff discovered that Chatta had reduced the clinical effort to forty percent (40%) for Dr. Dharmesh Gopalakrishnan, a new, less experienced, light-skinned doctor of South Indian descent and of the Hindu religion, despite the long-standing practice that all new faculty members start at fifty percent (50%) clinical capacity.

77. Chatta also interfered with Plaintiff becoming a new clinical trial Principal Investigator (PI).

78. On April 5, 2021, Cindy Myers, Site Activation Specialist, PRA Health Sciences, contacted Plaintiff to inquire about his potential appointment as the PI for the ARV-766-mCRPC-101 prostate study.

79. Plaintiff forwarded this information to Chatta for approval, who denied his request to become the PI, stating that "all advanced Prostate studies need to go through me."

80. Plaintiff told Chatta that he was specifically asked to do this study "because of my prominence in the field on [Genitourinary] Oncology, not what happens internally at [Roswell Park]. This study came to me through Elmer Berghorn who knows me for the past decade or so as a clinical investigator in [Genitourinary]. It is based on personal connection."

81. Plaintiff further noted that he was the PI in several prostate studies within the past decade.

82. Despite Plaintiff's qualifications and his hope to further his career and contributions to the field of prostate cancer research, Chatta self-servingly designated himself as the lead.

83. Chatta falsely claimed that all prostate cancer trials had been going through him and all kidney cancer trials had been going through Plaintiff since 2016.

84. On March 5, 2021 Plaintiff was informed by David Scott, Diversity Officer, that there were three complaints against him.

85. Thereafter, Plaintiff met with him and Diane Morgante from his office and learned that there were complaints from two people who worked with him and one person who did not.

86. Later, Scott advised the Plaintiff that the complaints were not going to be pursued.

87. This situation caused the Plaintiff a good deal of distress.

88. Plaintiff was then informed by Human Resources that there had been additional anonymous complaints made against him.

89. Plaintiff had an administrative interrogation on June 3, 2021.

90. At the interrogation, Plaintiff learned that false allegations had been made against him.

91. These anonymous complaints surfaced against the Plaintiff all of a sudden, after being at Roswell for nearly 11 years without any complaints against him.

92.     Plaintiff believes that the discrimination he has faced from Chatta since he came to the institute is similar to the ethnic discrimination by North Indians against South Indians and against Christian Indians.

**FIRST CAUSE OF ACTION FOR VIOLATIONS OF TITLE VII FOR RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION**

93.     George repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

94.     George is south Indian with a darker brown complexion.

95.     George had been a good, dutiful employee of Roswell since 2010.

96.     George was qualified for the position he held.

97.     George was treated differently than his peers because of his race, color and national origin.

98.     Upon information and belief, non-south Indian, lighter brown complexion employees were not treated in this fashion by Roswell.

99.     George was subjected to discriminatory comments regarding his skin color.

100.    Roswell, acting through its employees, demonstrated animus toward George based on his race, color and national origin. Accordingly, the aforementioned conduct against George occurred under circumstances that give rise to an inference of discrimination due to George's race, color and national origin.

101.    For all the foregoing reasons, the Defendant Roswell has engaged in the unlawful employment practice of discrimination against George in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

102. As a result of Roswell's discrimination in violation of Title VII, George has been damaged in an amount to be determined by a jury at the time of trial.

### SECOND CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW FOR RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION

103. George repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

104. During George's employment with Roswell, Roswell discriminated against George with respect to the terms, conditions and privileges of employment because of the plaintiff's race, color and national origin, in violation of Article 15 of the New York State Human Rights Law, § 296, et seq. ("NYSHRL"), as delineated above.

105. As a result of Roswell's discrimination in violation of the NYSHRL, George has been damaged in an amount to be determined by a jury at the time of trial.

### THIRD CAUSE OF ACTION FOR VIOLATIONS OF TITLE VII FOR RELIGIOUS DISCRIMINATION

106. George repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

107. George is a Christian.

108. George's supervisor, Dr. Chatta, is Hindu/Sikh.

109. George was treated in a discriminatory manner by, *inter alia*, creating a hostile work environment and preventing George from assignments and benefits of employment.

110. These actions intensified after George made good faith complaints to Roswell agents about his treatment.

111. During George's employment with Roswell, Roswell discriminated against George with respect to the terms, conditions and privileges of employment because of George's religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

112. As a result of Roswell's discrimination in violation of Title VII, George has been damaged in an amount to be determined by a jury at the time of trial.

### FOURTH CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW FOR RELIGIOUS DISCRIMINATION

113. George repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

114. During George's employment with Roswell, Roswell discriminated against George with respect to the terms, conditions and privileges of employment because of the plaintiff's religion, in violation of Article 15 of the New York State Human Rights Law, § 296, et seq., as delineated above.

115. Moreover, the above alleged acts and/or omissions of Roswell and Chatta aided, abetted, incited, compelled, and/or coerced the discriminatory practices suffered by George.

116. As a result of Roswell's discrimination in violation of the NYSHRL, George has been damaged in an amount to be determined by a jury at the time of trial.

### FIFTH CAUSE OF ACTION FOR FOR RETALIATION UNDER TITLE VII

117. George repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

118. Pursuant to Title VII, it is unlawful to retaliate against an individual for making or supporting a charge of discrimination. 42 U.S.C. § 2000e-3(a).

119. Roswell engaged in a continuing pattern and practice of retaliation against George in violation of Title VII and failed to take any remedial action with respect to George's complaints to his supervisors regarding unlawful discrimination.

120. On several occasions, George complained, in good faith, to his supervisors and Human Resources about discrimination and unlawful conduct in the workplace. By protesting the discrimination and unlawful conduct, George engaged in protected activity under Title VII.

121. As a result of George's protected activity, Roswell took adverse employment actions against George.

122. Roswell's aforementioned actions toward George are adverse employment actions because a reasonable employee, such as George, would have found the actions materially adverse; which might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

123. The aforementioned adverse employment actions and the demonstrate that Roswell was motivated by retaliatory animus toward George and there is a causal connection between the adverse employment actions and George's protected activity.

124. For all the foregoing reasons, during George's employment with Roswell, Roswell retaliated against George with respect to the terms, conditions and privileges of employment because of George's complaints of race and/or color discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

125. As a result of Roswell's retaliation in violation of Title VII, George has been damaged in an amount to be determined by a jury at the time of trial.

### SIXTH CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW DUE TO RETALIATION

126. George repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

127. During George's employment with Roswell, Roswell retaliated against George with respect to the terms, conditions and privileges of employment because of George's complaints of race and/or color discrimination in violation of Article 15 of the New York State Human Rights Law, § 296, et seq., as delineated above.

128. As a result of Roswell's retaliation in violation of the NYSHRL, George has been damaged in an amount to be determined by a jury at the time of trial.

### SEVENTH CAUSE OF ACTION FOR INDIVIDUAL LIABILITY UNDER THE NEW YORK HUMAN RIGHTS LAW

129. George repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

130. According to NYSHRL, it is an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so. *See* N.Y. Exec. Law. § 296(1)(a).

131. Upon information and belief, and at all relevant times hereto, Chatta was employed by Roswell and had decision-making authority to control the terms, conditions and privileges of George's employment.

132. Pursuant to the NYSHRL, it is an unlawful discriminatory practice for an employer to, *inter alia*, discriminate or retaliate against an individual in promotion, compensation or in terms, conditions, or privileges of employment, because of such individual's race, color, national origin or religion.

133. Chatta was aware of George's race.

134. Chatta was aware of George's color.

135. Chatta was aware of George's national origin.

136. Chatta was aware of George's religious affiliations.

137. Chatta made comments that disparaged George's race, color, national origin and religion.

138. Chatta violated the NYSHRL when he discriminated against George on the basis of his religion, race, color, and national origin by interfering with George's employment and creating a hostile work environment.

139. George opposed unlawful practices when George raised claims involving discrimination and retaliation by defendant on multiple occasions.

140. As a direct and proximate result of said acts, George has suffered and continues to suffer damages, including, but not limited to, lost salary and benefits and interest thereon, pain and suffering, humiliation, mental anguish, emotional distress and loss of enjoyment of life.

141. As a result of Chatta's unlawful conduct, George has been damaged in an amount to be determined by a jury at the time of trial.

## EIGHTH CAUSE OF ACTION FOR VIOLATIONS OF 42 U.S.C. § 1981 FOR RACE DISCRIMINATION AND RETALIATION

142. Plaintiff repeats and reiterates each and every allegation of this complaint above with full force and effect as if set forth at length in this cause of action.

143. During plaintiff's employment with Roswell, said Roswell deprived the plaintiff, an Indian of lighter brown complexion of his civil rights under 42 U.S.C. § 1981, as outlined above, based upon his race.

144. Roswell further retaliated against the plaintiff after he complained of the disparate treatment he was receiving because of his race, and plaintiff then experienced additional acts of harassment and discrimination.

145. As such, plaintiff was not allowed to make and enforce contracts as is enjoyed by white citizens.

146. This treatment caused the plaintiff to suffer embarrassment, humiliation, and economic damages.

147. During plaintiff's employment with the defendant, said defendant discriminated and retaliated against the plaintiff with respect to the terms, conditions and privileges of employment, in violation of 42 U.S.C. § 1981, as delineated above.

   **WHEREFORE**, George requests the following relief:

   A. Enter judgment that Roswell's and Chatta's treatment of George constitutes a violation of the foregoing statutes;

   B. Grant George a permanent injunction enjoining Roswell, their agents, successors, employees, and those acting in consort with Roswell, such as Chatta, from continuing to violate George's civil rights;

C. Award George his lost income, value of lost benefits, bonuses, pre-judgment interest, post judgment interest, and other monetary losses caused by Roswell and Chatta's interference with income opportunities;

D. Award George the amount of any lost or diminished Social Security benefits;

E. Award George emotional distress damages, out-of-pocket expenses, and any and all other pecuniary and non-pecuniary compensatory damages caused by Defendants' unlawful conduct as set forth herein;

F. Award George attorneys' fees, costs and disbursements in this action;

G. Award George punitive damages against the individual Defendant;

H. Award George prejudgment interest; and

I. Grant George such other relief as this Court deems proper.

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure, trial by jury on all issues is demanded.

Dated: December 22, 2022
Rochester, New York

TULLY RINCKEY, PLLC

By: Karen Sanders, Esq.
Senior Counsel
*Attorneys for Plaintiff Saby George, MD*
400 Linden Oaks, Suite 110
Rochester, New York 14625
Phone: (585) 492-7100
Fax: (585) 331-8899
ksanders@tullylegal.com